UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

MONTY DEWAYNE BELL               )
                                 )
       *Plaintiff*,              )
                                 )      Case No. 1:11-cv-14
v.                               )
                                 )      Judge Mattice
STATE OF TENNESSEE               )
                                 )
       *Defendant*.              )

## MEMORANDUM AND ORDER

Magistrate Judge William Carter filed a Report and Recommendation (Doc. 3) ("R&R") on March 17, 2011 provisionally granting Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 1) and recommending that Plaintiff's Complaint (Doc. 2) be dismissed pursuant to 28 U.S.C. § 1915(e)(2) as seeking monetary relief against a defendant who is immune from such relief.

Plaintiff filed a "Motion for Hearing" (Doc. 4) on March 17, 2011, addressed to "The U.S. Department of Justice, Mr. Eric Holder, and staff members" and to "The U.S. District Court for the Eastern District of Tennessee Southern Division, The Honorable Mattice/Carter Mr. William B. Carter, and clerk's office." As that document referred to Magistrate Judge Carter's Report and Recommendation and was filed within the time specified in the R&R to file objections, it would seem to be Plaintiff's objections to the R&R. Yet, in his motion, Plaintiff does not cite any portion of the R&R with which he disagrees, but rather reiterates many of the statements made in his Complaint and appears to attempt to amend his Complaint in light of the deficiencies identified in the R&R, including attaching documents he believes clarify and support his claims. (Doc. 4, Pl.'s Mot. for Hr'g)

("Although I am extremely greatful for the open lines of communications and the timely response to my claim for justice, relief and for redress. I had no alternative but to submit the enclosed documents and to offer the following facts about the extremely serious serious reasons for filing this claim for damages.")

For instance, Magistrate Judge Carter noted (correctly) that the only defendant named in the complaint is the State of Tennessee and that 42 U.S.C. § 1983 ("Section 1983") – the only identifiable source of a legally-cognizable claim in the Complaint – does not provide a remedy for litigants seeking to sue a state directly. In his response, Plaintiff adds twenty-three new defendants to the caption of his case in addition to the State of Tennessee, changing his Complaint from suing the "State of Tennessee" to one suing "agents of" twenty-four different entities "and other known and unknown parties in collaboration with them."

As motions to amend are frequently heard in conjunction with motions to dismiss, and common uses of Federal Rule of Civil Procedure 15(a) include amending "to cure a defective pleading," "to correct insufficiently stated claims or defenses," or "to change the nature or theory of the party's claim." 6 Charles Alan Wright et al., Fed. Prac. & Proc. § 1474 (3rd ed. 2010), this Court hereby **CONSTRUES** Plaintiff's "Motion for Hearing" (Doc. 4) it as a motion to amend his complaint pursuant to Rule 15(a).[1]

---

[1] Plaintiff subsequently filed a "Motion to Request an Immediate Response to Complaint at Lawsuit" (Doc. 5) on July 28, 2011 and a "Motion for Response in 15 Days" (Doc. 6) on August 2, 2011. Neither of these motions has any substance or merit and thus do not affect the Court's discussion below. Further, given the Court's disposition of the IFP Motion, all other outstanding motions will be denied as moot.

# I. STANDARD OF REVIEW

This Court must conduct a de novo review of those portions of the R&R to which an objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). As noted above, though, Plaintiff's response (Doc. 4) in this case is construed as a motion to amend.

Under Rule 15(a), "the court should freely give leave [to amend] when justice so requires," but a court may deny leave to amend if the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment would be futile where it "would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

Federal Rule of Civil Procedure 12(b)(6) provides an affirmative defense for a party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This defense is typically asserted as a motion to dismiss, where the movant challenges the sufficiency of claims set forth in a complaint. In *Ashcroft v. Iqbal*, the Supreme Court of the United States expanded on its holding in *Bell Atl. Corp. v. Twombly* by stating that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court explained this restatement by outlining the two "working principles" that underlay *Twombly* and govern a motion to dismiss. *Id*. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and thus "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements do not suffice." *Id.* Instead, a court considering a motion to dismiss should accept as true only well-pleaded factual allegations. *Id.* at 1950. Accordingly, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

The second principle outlined in *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). The reviewing court must determine, not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Therefore, to survive a motion to dismiss under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

Finally, Plaintiff represents himself in this matter. Although a *pro se* pleading must be construed liberally and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), his *pro se* status does not exempt the Plaintiff from the requirement that he comply with relevant rules of procedural and substantive law. *Hulsey v. Texas,* 929 F.2d 168, 171 (5th Cir. 1991). *Pro se* plaintiffs must comply with Rule 8, which provides that a

-4-

complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby Cnty Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996); *LRL Properties,* 55 F.3d at 1103-04.

## II.    FACTUAL BACKGROUND

As Magistrate Judge Carter observed in his R&R, Plaintiff's Complaint is forty-three pages long, handwritten, and difficult to follow, but seems to assert a claim for damages under 42 U.S.C § 1983 for violations of his constitutional rights that occurred in the prosecution of two unrelated criminal charges in Tennessee state court. As noted above, the Motion for Hearing adds detail regarding his allegations.

### A.    The Complaint

First, after spending several pages detailing his disagreements with a newspaper reporter who wrote an article mentioning him, he alleges that a Tennessee Multicultural Chamber of Commerce, Inc. ("TMCC") employee (hereinafter "Complainant") engaged in "Censorship," "Theft," and "judge shopping" in violation of a variety of his rights, particularly his rights pursuant to the First Amendment, by maliciously swearing out a false affidavit of complaint. (Compl. 12-14.) He claims this false affidavit caused him to be arrested on July 27, 2009 and "forced to serve in detention, under the verdict given . . . 08/06/09, by Moon, Robert, Bob L. Jr. judge of the Court of General Sessions-Div. V [ ] Held, under prosecutor's 'Unfair Sentencing Guidelines,' on an 11 month's and 29 days sentence, at Chattanooga's Hamilton County's Corrections Detention Facility (Silverdale)." (*Id.* at 14-15.)

-5-

This appears to be the case history of the harassment charge outlined in Hamilton County Criminal Docket #273312, which Plaintiff attached as an exhibit to his Motion for Hearing. (Doc. 4-1, 1-2, Pl.'s Mot. for Hr'g, Ex. 1, Docket #273312 (Harassment).)

He mentions the other charge – Possession of a Controlled Substance, filed by a TWRA officer (Doc. 4-1, 2-3, Pl.'s Mot. for Hr'g, Ex. 2, Docket #270167 (TWRA)) – briefly before discussing "violations" in the state court hearings on the two charges. (Compl. 16-17.) These "violations" largely amount to the judges' denials of his motions, and he spends the next several pages discussing these "improprieties" engaged in by the two Hamilton County judges who heard his cases, including "judge shopping," "Malicious Prosecution," "Appoint[ing] Ineffective Assistance of Counsel," denying him access to evidence, denying him pretrial release on his own recognizance, assault by a court's officer, and denial of his right to a speedy trial. (*Id.* at 17-21.) He then alleges he "called into question the 'Veracity' of [the Complainant's] 'AFFIDAVIT'" but was ignored; the State proceeded with the prosecution, put the Complainant on the stand, and she perjured herself. (*Id.* at 22-25.) As Plaintiff was never tried on these charges, this account appears to refer to testimony offered during the hearing on the motion to set or reduce bond on September 21, 2009. (*Id.* at 25; Docket #273312 (Harassment).)

He then spends several pages detailing how he met the Complainant in April 2009 while writing an article about Chattanooga politicians and promoting his documentary "Foot-Steps-N-Frames Walking Out of Poverty." He alleges she promised to help him but then reneged, in part because of his derogatory and inflammatory language about the newspaper reporter complained of in the beginning of this Complaint. (Compl. 25-34.)

Finally, Plaintiff renews his complaints about procedural violations. He repeats his

-6-

charge that he was held in a "lengthy pre-trial sentence of 11 months and 29 days detention" and quotes Special Judge Blackwood on the judge-shopping allegations in TWRA cases, including his. (*Id.* at 34-35.) Finally, he says the charges were dismissed on January 7, 2010, and he was released from custody on January 22, 2010 (*Id.* at 36), before spending the remainder of his Complaint discussing slavery.

## B.    Motion for Hearing

Plaintiff's Motion for Hearing attempts to clarify his Complaint and correct the circumstances requiring dismissal identified by Magistrate Judge Carter by adding defendants to the action and details to his complaints and by appending documents.

As noted above, first he changes the caption of his case from one suing the "State of Tennessee" to one suing "agents of" twenty-four different entities "and other known and unknown parties in collaboration with them."[2] He also adds, as a statutory basis, claims under 42 U.S.C. §§ 1985 and 1986, apparently adding to his initial claims of official interference with his civil rights by state officers conspiracy and failure to prevent claims. (Mot. for Hr'g 3.) He clarifies that the "claim for justice" includes a "fictitious Affidavit of

_____

[2] Specifically, in his Motion for Hearing Plaintiff names as defendants: (1) Agents of the State of Tennessee; (2) Agents of the Chattanooga City Mayors Office; (3) Agents of the Hamilton County Mayors Office; (4) Agents of the District Attorney's Office; (5) Agents of the District Public Defenders Office; (6) Agents of the General Sessions Court of Hamilton County Div. V; (7) Agents of the Criminal Court of Hamilton County Tn. Div. III; (8) Agents of the Chattanooga City Council; (9) Agents of the Chattanooga Hamilton County Commission; (10) Agents of the Chattanooga Times Free Press; (11) Agents of the Tennessee Multicultural Chamber of Commerce, Inc.; (12) Agents of the Chattanooga City Court; (13) Agents of the Television News and Radio broadcast Stations; (14) Agents of the Tennessee Wildlife Resource Agency (TWRA); (15) Agents of the Chattanooga City Police Department; (16) Agents of the Greater Chattanooga Area Urban League; (17) Agents of the Local Chapter NAACP; (18) Agents of the Chattanooga Housing Authority; (19) Agents of the Chattanooga Homeless Coalition; (20) Agents of the Local 614 Salvation Army; (21) Agents of the Chattanooga Rescue Mission; (22) Agents of the Chattanooga Community Kitchen; (23) Agents of the Hamilton County Juvenile Court; and (24) Agents of the TN. Human Rights Commission.

Because the "agents of" language beginning each defendant's name seems merely to be a formalistic recitation with little bearing on his actual allegations, the Court refers to each enumerated "agents of" group as a singular defendant.

complaint by (agents) of the [TMCC] and (agents) of The Chattanooga City Police," and that his due process and equal protection claims are based on "gender bias, censorship, theft of property, judge shopping and also false imprisonment. Coupled with ineffective assistant of Council." (*Id*. at 5.) He notes that "[t]he evidence will show that I was falsely accused, illegally injailed for 11 months and 29 days for something I was not guilty of. Something that was never proven in the court proceedings. And for something that was merely alleged." (*Id.*) He finally says that the evidence will show a "conspiracy to deprive me of rights and privileges dat[ing] back to 1987-1989" that included "blacklist[ing]" him, destroying his broadcasting career, hurting his company, removing registration from his vehicles, a 2000 assault charge, and some property loss, including his documentary and van. (*Id.* at 6-7.) He concludes that the 2009 Affidavit "clearly shows the pattern and force behind the powers of the government (agents) who engage in the action of willful disobedients, in Chattanooga." (*Id.* at 7.) He attaches to this motion the #273312 Docket as Exhibit 1, the #270167 Docket as Exhibit 2, and an unsigned copy of a "Motion to Dismiss Indictment on Grounds of Violation of Due Process of Law" prepared by District Public Defender Ardena J. Garth in relation to his TWRA case (#270167), as Exhibit 3.

## III.  ANALYSIS

Even if this Court were to allow Plaintiff to amend his Complaint – as he appears to be attempting to do by adding "agents of" twenty-four agencies to the caption of his case in his "Motion for Hearing" – such amendment would be futile, both due to specific pleading failures that could not be remedied – the legal requirements of the causes of action he appears to assert and the identity of the defendants he adds – and, more generally, the

nature of his Complaint and Motion for Hearing, which were at once legally conclusory and factually nonspecific, repetitive and immaterial. Although the Motion for Hearing somewhat clarifies the allegations in his Complaint, it does so largely by attaching documents that, though few in number, are detailed. These documents aid the Court substantially in evaluating Plaintiff's allegations by providing a coherent framework within which the Court can interpret – and concrete reference points to which the Court can refer while so interpreting – Plaintiff's often confused, contradictory, and immaterial allegations. Other than these documents, however, the Motion for Hearing adds no useful detail or argument, but largely reiterates the same nonspecific, conclusory allegations.

Regardless, although his Complaint and Motion for Hearing consist of a number of seemingly-unrelated grievances, to the extent the Court can discern within them cognizable claims, Plaintiff appears to be alleging (1) a conspiracy "to deprive [him] of rights and privileges dat[ing] back to 1987-1989," and culminating in the TWRA and harassment criminal charges; (2) false imprisonment, assault, and a deprivation of due process claim in the TWRA case (#270167); and (3) a malicious prosecution claim against the TMCC employee and those involved in his prosecution in the harassment case (#273312). The Court will address each of these matters in turn but, before doing so, the Court must make two observations.

First, several of the defendants added to the caption – "(17) Agents of the Local Chapter NAACP"; "(18) Agents of the Chattanooga Housing Authority"; "(20) Agents of the Local 614 Salvation Army"; "(21) Agents of the Chattanooga Rescue Mission"; "(23) Agents of the Hamilton County Juvenile Court"; and "(24) Agents of the TN. Human Rights Commission" – are not mentioned anywhere else in either the Complaint or Motion for

-9-

Hearing. As such, even if the Court were to allow Plaintiff to amend his claim, as to these six defendants he would clearly fail to state a claim and thus would have to be dismissed.

Second, the Court also notes that the very materials appended to the Motion for Hearing, particularly the copies of the dockets for the harassment and TWRA charges, undermine or directly contradict many of Plaintiff's factual contentions. For instance, a major basis of Plaintiff's Complaint is that he was illegally incarcerated at Silverdale Correctional Facility for 11 months and 29 days, beginning with his illegal arrest on July 27, 2009 and "under the verdict given, (A Rush to Judgment), under the hand on this date: 08/06/2009, by Moon, Robert Bob L. Jr." (Compl. 15.) Even under the most generous reading, this "fact" is an impossibility as a matter of pure logic, as it would have required him to be incarcerated until, at a minimum, July 26, 2010; as Defendant elsewhere states – and the documents appended to the Motion for Hearing make clear – all pending charges were dismissed no later than January 22, 2010.

The exhibits Plaintiff attaches to his Motion for Hearing make clear that Plaintiff is confusing the circumstances of his two cases. He was found guilty of the TWRA charge on November 12, 2008 and received a suspended sentence of 11 months and 29 days from which he appealed. He was briefly taken into custody on December 5, 2008 after leaving court without posting his appeal bond, but he was then released on his own recognizance no later than December 8, 2008 and continued on a personal recognizance bond for the TWRA charge for its pendency. He was arrested on the harassment charge on July 27, 2009, and a grand jury indicted him and his motion to set and reduce his bond was overruled in that matter after a hearing on September 21, 2009. The harassment case was continued repeatedly until it was settled and dismissed by the State of Tennessee on

-10-

January 22, 2010.

Overall, many of Plaintiff's assertions, aside from being vague or conclusory, are undermined or contradicted by the documents he appended to his Motion for Hearing. Because "[a] court is not bound to accept either (1) unwarranted inferences, including allegedly inferable 'facts' or conclusions which contradict documentary evidence appended to, or referenced within, the plaintiff's complaint," *Mulbarger v. Royal Alliance Assoc., Inc.*, 10 F. App'x 333, 335 (6th Cir. 2001) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)), these significant inconsistencies further underscore the futility of allowing any amendment.

## A.    Plaintiff's Conspiracy Claims

The vast majority of the defendants Plaintiff did mention somewhere aside from the caption of his Motion for Hearing – (2) Agents of the Chattanooga City Mayors Office; (3) Agents of the Hamilton County Mayors Office; (8) Agents of the Chattanooga City Council; (9) Agents of the Chattanooga Hamilton County Commission; (10) Agents of the Chattanooga Times Free Press; (13) Agents of the Television News and Radio broadcast Stations; (16) Agents of the Greater Chattanooga Area Urban League; (19) Agents of the Chattanooga Homeless Coalition; and (22) Agents of the Chattanooga Community Kitchen – are mentioned no more than a handful of times, either in passing or by implication, and only in the context of vague allegations about the "conspiracy."

For instance, one of the defendants, "(16) Agents of the Greater Chattanooga Area Urban League," is only ever mentioned in the following sentence: "[e]ven though, I was permanently banned forever., from entering the complex, of The Urban League of Greater

-11-

Chattanooga . . . by its president . . . for having type-written my letter 'Who's Holding Chattanooga's Elite to the Letter Grades (A-F)?' on the Urban Leagues, (open to the public) computers." (Complaint at 27.) Plaintiff does not make clear the relation this act has to the remainder of his complaints, such as what he did "even though" this ban was instituted. Likewise, Plaintiff added "(13) Agents of the Television News and Radio broadcast Stations" as defendants, but they are not identified with any further specificity and are only mentioned by implication where he alleges a "conspiracy to deprive me of rights and privileges dat[ing] back to 1987-1989. When I was a young, inspiring, professional, local radio news investigator/reporter and broadcast news announcer," and includes among the conspiracy's acts "[t]he blacklist of [Plaintiff] in 1987 and the destructive methods of 1989 to prevent the success and to end my local broadcast career." (Mot. for Hr'g 6-7.)

The Complaint only mentions a "conspiracy" twice in its forty-three pages, with both mentions in confused sentence fragments. (Compl. 14, 41) In his Motion for Hearing Plaintiff attempts to clarify that "[m]y two (2) cases in the lower courts are both separate but equal parts of a conspiracy to interfere with my civil rights and for depriving me, and other persons of color (particularly black males), of rights and privileges in Chattanooga," and says that his claim is also brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. (Mot. for Hr'g 3.)

He goes on to provide the following detail about the contours of this conspiracy:

> The evidence in this case will show that a conspiracy to deprive me of rights and privileges dates back to 1987-1989. When I was a young, inspiring, professional, local radio news investigator/reporter and broadcast news ANNOUNCER. (covering local elections and other minority interest stories.

The evidence will show that racial discrimination in Chattanooga was just as prevalent in 1987, as it was in 1906. . . .

The blacklist of Monty Dewayne Bell in 1987 and the destructive methods of 1989 to prevent the success and to end my local broadcast career, and to prevent the start up of Monty Bell's Chattanooga Lend a Hand Network, the politics behind the demise of Monty Bell's Public Exposure Company (Pub-X-) in 1993-1995, the removal of City and State vehicle registration from my company cars 1995-1997, the bogus charge of assault in 2000, and now the censorship, theft, false imprisonment, judge shopping (2) counts, the lost documentary, and equipment, the lost of my van which was also my home, the Affidavit of 2009 clearly show the pattern, and the force behind the powers of government (agents) who engage in the action of willful disobedients, in Chattanooga.

(*Id.* at 7-8.)

"Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005). 42 U.S.C. § 1985 ("Section 1985") targets conspiracies to violate civil rights by providing a cause of action when "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws . . ." or when "two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws. . . ." 42 U.S.C. §§ 1985(2), (3).[3] Finally, 42 U.S.C. § 1986 ("Section 1986") extends liability to persons who knowingly fail to prevent conspiracies

---

[3] Section 1985 (1) prohibits conspiracies that interfere with the performance of official duties by federal officers. Plaintiff does not claim that any federal officers were involved in this case. Thus, the Court discerns Plaintiff is bringing his claims under § 1985 (2) and (3).

under Section 1985 by "establish[ing] a cause of action against anyone, who has knowledge of a conspiracy under § 1985, and 'having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do."*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting 42 U.S.C. § 1986).

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. . . . All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Mettetal v. Vanderbilt Univ. Legal Dep't*, 147 F. App'x 577, 585 (6th Cir. 2005). To survive a motion to dismiss, a plaintiff must plead his conspiracy claim with some specificity. *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). "[V]ague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.*

In the instant case, Plaintiff alleges a vast conspiracy spanning at least a 24-year period, beginning with his "blacklist" in 1987 and running through the prosecution of the harassment and TWRA charges, and connected to a general "framework of recurring injustices of the malicious injustice inflicted on blackmen . . . [and] maintained with the discriminatory purpose of diluting black strength here in Chattanooga." (Mot. for Hr'g 8.) While there is no doubt he is alleging a conspiracy tied to his race, he has not actually alleged a unified plan connecting all the defendants or even alleged specified overt acts taken by all the defendants, let alone acts in furtherance of the plan. Instead, he largely defines the conspiracy externally – by misfortunes that have befallen him – rather than specific acts taken against him. Even when he does directly allege some sort of obstruction

-14-

– as when he accuses "several employees of the City Mayor's, Ron Littlefield's, office" of "temporarily hinder[ing]" him – he does not say what they were hindering him from doing, let alone of which rights they were conspiring to deprive him or how their hindrance was in furtherance of a plan to deprive him of those rights.

The only two areas in which he alleges specific acts taken by identified or identifiable people are the harassment and TWRA criminal charges. But even as to those two charges, he does not allege any connection *between* the agents in those conspiracies or the contours of any plan uniting those two charges, discussing instead conspiracies internal to each of those charges, such as the TWRA "judge shopping" and the court's ignoring his challenges to the veracity of the affidavit in the harassment case. (Compl. 18, 22.) Because the charges were separated by more than a year and involved different arresting officers, different accusations of criminal conduct, different complainants, different judges, and different reasons for dismissal, Plaintiff's mere use of the word "conspiracy" in his Complaint does not render his vague, conclusory allegations sufficient to state a claim for civil conspiracy under Section 1983 or 1985. Further, a claim under 42 U.S.C. § 1986 may only be pursued where a plaintiff states a cause of action for a civil rights conspiracy under 42 U.S.C. § 1985. *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990); *see also Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) (dismissing § 1986 action because § 1985 conspiracy action was already dismissed.)

Accordingly, the Court will consider the two main criminal cases separately from the other allegations. As to Plaintiff's civil conspiracy claims, including his failure to prevent a civil conspiracy claim, brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, even if the Court were to allow Plaintiff to amend his complaint, would be dismissed with prejudice as

to all Defendants.

Finally, as several of the Defendants – (2) Agents of the Chattanooga City Mayors Office; (3) Agents of the Hamilton County Mayors Office; (8) Agents of the Chattanooga City Council; (9) Agents of the Chattanooga Hamilton County Commission; (10) Agents of the Chattanooga Times Free Press[4]; (13) Agents of the Television News and Radio broadcast Stations; (16) Agents of the Greater Chattanooga Area Urban League; (19) Agents of the Chattanooga Homeless Coalition; and (22) Agents of the Chattanooga Community Kitchen – are mentioned *only* in the context of this conspiracy claim, the dismissal of these conspiracy claims resolves all of Plaintiff's claims against these defendants.

### B.    Plaintiff's Claims Related to the TWRA Case (#270617)

Plaintiff makes several claims related to the TWRA case, but all the facts alleged in his Complaint and evident in the docket sheet for the charge make clear that Plaintiff's appeal was dismissed "by agreement of the parties" on January 7, 2010. (Mot. for Hr'g, Ex. 2.) Therefore, the latest possible date on which his claim could have started to accrue was as of January 7, 2010.

"The statute of limitations for a § 1983 claim is generally the applicable state-law period for personal-injury torts." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 123 n.5 (2005). Under Tennessee law, such actions must be filed within one year after the

---

[4]  Although the defendant "(10) Agents of the Chattanooga Times-Free Press," presumably a reference to the author of the article Plaintiff found objectionable, is mentioned significantly more often than the other defendants outlined in this section, Plaintiff fails to allege any connection between his allegations against the newspaper and author and his two criminal cases. Additionally, he fails to allege any connection between the newspaper and reporter and any of the other actors in the "conspiracy." Therefore, all claims against this defendant will be dismissed with prejudice along with those against the other defendants discussed in this section.

-16-

cause of action has accrued. *Laney Brentwood Homes, LLC v. Town of Collierville*, 144 F. App'x 506, 509 (6th Cir. 2005); *see* Tenn. Code Ann. § 28-3-104(a)(1), (3). Therefore, for all claims related to the prosecution of the charge originally filed by the TWRA (#270167), Plaintiff had to initiate his lawsuit no later than one year after January 7, 2010. As Plaintiff's Complaint and Motion for Leave to Proceed *in Forma Pauperis* were not filed until January 21, 2011, all claims related to the TWRA charge[5] are time-barred, amendment would be futile as all claims would have to be dismissed with prejudice.

### C. Plaintiff's Claims Related to the Harassment Case (#273312)

Although Plaintiff's case relates to the harassment charge was filed within the one-year statute of limitations, it must be dismissed for several other reasons.

As with the general conspiracy claims, Plaintiff's claims related to the harassment charge are very difficult to follow, due in large part to their fragmentary and conclusory nature. It is these characteristics that render any amendment futile and dismissal appropriate. This Court is not "required to create [Plaintiff]'s claims for him," because "[t]o do so would requir[e the] courts to explore exhaustively all potential claims of a *pro se* plaintiff" and would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful

---

[5] This includes the assault – claimed to be a violation of Plaintiff's rights pursuant to the Eighth Amendment– on pages 20 and 35 of the Complaint. As this "assault" was alleged to have occurred on January 7, 2010, this claim, as with the other TWRA-related charges, is time-barred. Even if it were not, however, Plaintiff did not plead it with enough specificity to survive dismissal. Not only did he fail to allege anything beyond an "assault" – necessary details including the nature of the "assault," the resultant harm, or the identity of the assailant, among other things – but, as the Sixth Circuit has held "[t]he test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) (citing *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993)). Defendant has not alleged he was in pain at all, let alone circumstances indicating that its infliction was "unnecessary and wanton."

strategies for a party." *Thompson v. A.J. Rose Mfg. Co.*, 208 F.3d 215 (6th Cir. 2000) (internal quotation marks omitted) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (While precedent "directs district courts to construe pro se complaints liberally[, i]t does not require those courts to conjure up questions never squarely presented to them. District judges are not mind readers. Even in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments, which is essentially what Beaudett is seeking here."). *See also*, *Crawford v. Crestar Foods*, 210 F.3d 371 (6th Cir. 2000).

First, he appears to claim that the TMCC violated his First Amendment rights by refusing to publish and publicize his documentary, as he believed it had promised him it would. (Compl. 12.) But, to the extent Plaintiff is arguing that the TMCC violated his rights by failing to help publish his materials, he fails to state a claim on several grounds.[6] First, he does not allege the TMCC or its employees were acting under color of state law, as required by Section 1983. More importantly, and despite his apparent belief to the contrary, Plaintiff does not have a right to have any of his materials – his article, his documentary, or anything else – published by a private entity. *Groswirt v. Columbus Dispatch*, 238 F.3d 421, 2000 WL 1871696, at *2 (6th Cir. 2000) (dismissing for failure to state a claim a request to compel a newspaper to publish a letter or pay damages for failing to publish

---

[6] Plaintiff also repeatedly alleges that the TMCC "stole" his documentary somehow, although it is not clear in what form or how they received the documentary from him or how they engaged in the theft. Aside from the vague and conclusory nature of his allegations on this point, there is no evidence or even allegation that the TMCC is a governmental agent or was ever acting under color of law, such that they would be liable for an illegal seizure of his property pursuant to Section 1983. Further, to the extent Plaintiff cites the source of the legal rights for his claims, Plaintiff repeatedly makes clear that he is asserting only federal causes of action. Therefore, this Complaint, either on its face or on the face of the Motion for Hearing, does not present any state causes of action.

letters because "[a] private publication has a First Amendment free press right to refuse to print material submitted to it for publication," and thus "a federal court cannot compel a newspaper to print an article submitted to it by a citizen.") (citing *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 255-58 (1974); *Johari v. Ohio State Lantern*, 76 F.3d 379, 1996 WL 33230, at *1 (6th Cir. Jan. 26, 1996)).

He then alleges that the Complainant, in collaboration with Officer Galen Roberts, created and filed a "malicious" and "slanderous" harassment complaint. The only details of the harassment charge comes from Plaintiff's description of what appears – Plaintiff is not clear as to the context – to be either the affidavit of complaint or the magistrate judge's findings when presented with the affidavit. Although it is sprinkled liberally with Plaintiff's parenthetical observations, it appears that the Complainant alleged that Plaintiff called her repeatedly and verbally threatened her "with promises of a brutal beat down (delivered courtesy of the [Plaintiff]'s drug dealing minors) at Fords place of employment." (Compl. 9.) The Complainant also alleged Plaintiff told her to "watch your back" after referring to a local youth shot in the back. (*Id.*) The Complainant alleged she finally took the Plaintiff's threats seriously after he discovered her home telephone number and called her there, at which time she was prompted to take action and her husband began escorting her to and from work until the Plaintiff was taken into custody. (*Id.*)

Over Plaintiff's objections, the magistrate accepted the affidavit and on July 27, 2009, he was arrested. Plaintiff claims that he was "forced to serve in detention, under the verdict given, (A Rush to Judgement), under the hand on this date: 08/06/2009, by Moon, Robert, Bob L. Jr. [General Sessions judge]," but the attached records reflect that Plaintiff requested his case be transferred from General Sessions to Criminal Court and thus

-19-

waived his detention hearing in the lower court. *Compare* (*Id.* at 9, 15) *with* (#273312 (Harassment) Docket). He also asserts that this detention was the result of an 11 month, 29 day sentence which required a $3,000 bond he could not pay but, as previously discussed, that "sentence" was a suspended sentence in his TWRA case, from which he appealed and on which he was released on a personal recognizance bond. (Dockets for #273312 (Harassment) and #270167 (TWRA).)

Plaintiff then alleges that the Complainant was allowed to "take the witness stand to offer more damaging <u>hear-say</u> 'SNITCH' and 'INFORMANT' type information against me," and that she "contradicted her earlier statements against me and PERJURED HERSELF UNDER OATH." (Compl. 24.) Aside from these conclusory descriptions, largely of the legal character of her testimony, he does provide any further detail about her testimony, either in the Complaint or Motion for Hearing, including which previous statements she contradicted, how she "perjured" herself," why the evidence was "hearsay" evidence, or what "informant" type information is. He also asserts (and objects to) this testimony was given in the proceedings of his TWRA case, but the docket entries for the respective cases make clear that the September 21, 2009 hearing date was in the harassment case only and that there were no hearings in the TWRA case on that date. (Dockets for #273312 (Harassment) and #270167 (TWRA).)

          1.    *Insufficiency of Factual Allegations*

Although many of Plaintiff's statements – his repeated description of the affidavit as "malicious" and "slanderous," his frequent mention of "malicious prosecution," and his allegations that the Complainant perjured herself – could be read to imply a charge that the Complainant knowingly filed a false charge against Plaintiff and then lied on the stand

about it as part of a malicious prosecution claim, he is only entitled to this implication (and thus the right to avoid dismissal) if he sets forth some factual basis for these claims.[7] *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 684 (6th Cir. June 1, 2011) (reversing and remanding a district court for denying a motion to dismiss because it "fail[ed] to apply the Supreme Court's teaching in *Twombly* and *Iqbal*" by "accept[ing] plaintiffs' alleged legal conclusions . . . without requiring supporting factual allegations.")

The Sixth Circuit held that a plaintiff must show the following four elements when bringing a malicious prosecution claim pursuant to Section 1983 premised upon a violation of his Fourth Amendment rights:

> (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute . . .
>
> (2) there was a lack of probable cause for the criminal prosecution . . .

---

[7] Plaintiff's allegations could also potentially be read to include a claim for false arrest, but such a claim would be barred by the statute of limitations. The Supreme Court recently made clear:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process. If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself. Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date . . . .

*Wallace v. Keto*, 549 U.S. 384, 390 (2007) (internal citations and quotation marks omitted). *See also*, *Eidson v. Tenn. Dep't of Children's Serv.*, 510 F.3d 631 (2007). Thus, although the contours of such a claim are not entirely clear, at a minimum it would have accrued as of the date of his arrest, July 27, 2009, and been tolled through, at the very latest, September 23, 2009 – when the indictment was filed in Criminal Court. As discussed above, such a claim would be subject to a one-year statute of limitations, and thus Plaintiff would have had to file the claim no later than September 23, 2010 to avoid dismissal on this ground.

-21-

> (3) as a consequence of a legal proceeding, the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure; [and]
>
> (4) the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal citations and quotation marks omitted). The Sixth Circuit further clarified that "'participated' should be construed within the context of tort causation principles. Its meaning is akin to 'aided.' To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." (*Id.* at 308, n.5)

The factual allegations in this case amply support a claim that a criminal prosecution was initiated against Plaintiff, that he was confined pending trial, and that the proceeding was resolved in his favor, but Plaintiff fails to make factual allegations supporting his claim that there was a lack of probable cause and that, as to each remaining Defendant, the defendant made, influenced or participated in the decision to prosecute.

Not only does Plaintiff fail to allege facts showing a lack of probable cause, Plaintiff's *only* attack on the lack of probable cause is a single citation to a Tennessee state case, *State v. Carter*, 16 S.W.3d 762 (Tenn. 2000), for the proposition that where an affidavit portion of an arrest warrant does not establish probable cause, the defendant's detention without a valid probable cause determination was in violation of the Fourth Amendment. (Compl. 14.) That case, however, involved an affidavit that the State stipulated did not establish probable cause on its face and a pretrial detention without a probable cause determination. The facts alleged by Plaintiff in this matter clearly allege a hearing by a magistrate on the affidavit *before* Plaintiff was detained. Further, the details of the affidavit,

-22-

even as recounted by Plaintiff and taken in the light most favorable to him, provide ample grounds from which a magistrate could find probable cause. The Complainant's affidavit – again, as related by Plaintiff himself – included allegations satisfying all the necessary elements of Tenn. Code Ann. § 39-17-308 and were subject to a credibility determination by not only the filing officer, Officer Roberts, but also a magistrate judge. Finally, even though he alleges they were "ignored," Plaintiff apparently had and took full advantage of numerous opportunities to raise his concerns about the truthfulness of the affidavit at all stages of the proceeding. *See, e.g.* (Compl. 8-9, 22; Mot. for Hr'g 5.)

Even if this Court were to read Plaintiff's repeated allegations that the affidavit was "malicious" and slanderous" as referring to a lack of probable cause, he never actually identifies which of the Complainant's statements or which of the details of his criminal history in the harassment affidavit were false, let alone alleges that Officer Roberts knew the facts in the affidavit were false and proceeded anyway. For instance, in the part of his Complaint in which he provides the detail about the factual basis for a malicious prosecution charge, he provides a detailed account of his many disagreements with the local reporter about her article that discussed him in part, and then says it was this criminal history that the Complainant and Officer Roberts "used to create and manifest their maliciously slanderous affidavit of complaint to arrest me." (Compl. 6-9.) But, his description of his disagreements with the local reporter make clear that he disagreed not with the facts of his criminal history as she outlined them, but rather with her stylistic choices and characterization of his criminal history. Likewise, Plaintiff seems to base his malicious prosecution charge on some perceived collusion between Officer Roberts and the Complainant in filing a false charge, but he only mentions Officer Roberts four times,

-23-

and all his mentions of the officer are limited to taking and filing the affidavit of complaint and including in it his criminal history. (Compl. 8-9, 25; Mot. for Hr'g 5.) Plaintiff never alleges that Officer Roberts discussed the affidavit at all with the prosecutor or the magistrate judge, let alone that he influenced the decision to prosecute the action. Although *Sykes* provides that "[b]ecause the Plaintiffs' malicious-prosecution claim is based on a police officer's supplying false information to establish probable cause, the determination of probable cause that the state court made at the Plaintiffs' preliminary hearing does not carry preclusive effect in the instant case," 625 F.3d at 310, n.8, Plaintiff has not actually alleged which information was false, let alone that Officer Roberts knowingly supplied that false information to establish probable cause.

Aside from his failure to allege sufficiently a lack of probable cause, Plaintiff also fails to allege facts supporting a claim that each remaining defendant made, influenced or participated in the decision to prosecute. As mentioned above, the *Sykes* court held "participation" in the decision to prosecute means participating "in a way that aids in the decision, as opposed to passively or neutrally participating," and, in that case, found such "participation" where the officer who filed the warrant application "deliberately made false or misleading statements and omitted material information from his warrant application in order to manufacture probable cause.") *Id.* at 308, n.5 & 306. Thus, where officers are defendants in malicious prosecution actions and where there was a valid indictment in the underlying criminal charge – as is the case here, particularly since Plaintiff has not challenged the validity of the indictment– plaintiffs were allowed to proceed only where they alleged the officer had engaged in certain types of egregious conduct including proceeding with an investigation that lacked probable cause on its face, testifying falsely in a probable

-24-

cause hearing, or fabricating or deliberately concealing evidence from the prosecuting attorney or court at a probable cause hearing. *Id. See also, Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007); *Gregory v. City of Louisville*, 444 F.3d 725, 738-39 (6th Cir. 2006).

There is no such claim against Officer Roberts here, let alone factual allegations relating to such a claim against Officer Roberts that would support such a claim against dismissal. Plaintiff only ever mentions Officer Roberts in the context of filing the affidavit and never makes any mention that he testified, particularly significant given that he only mentions Officer Roberts in conjunction with the Complainant, who he takes care to repeatedly accuse of testifying and perjuring herself. Accordingly, Officer Roberts's only involvement appears to have been in taking the complaint and, potentially, drafting the affidavit supporting the request for an arrest warrant. Plaintiff also never identifies which allegations in the affidavit he believes to have been false, let alone that Officer Roberts knew them to be false and proceeded anyway. An indictment was returned, the validity of which Plaintiff did not challenge, and the excerpts of affidavit Plaintiff included clearly show probable cause, so Plaintiff has not alleged that he pursued an arrest warrant where the matter clearly did not demonstrate probable cause. Finally, there is no mention of any contact between the prosecuting attorney and Officer Roberts or the Complainant, let alone an allegation that Officer Roberts exerted significant influence over the decision to prosecute.

In fact, of the remaining defendants, the only individual he actually charges with knowingly providing false information is the Complainant. As to her, he alleges that she provided the basis for the affidavit and then testified falsely on the stand. Although such acts would be sufficient if she were a state official, because there is no allegation that any

-25-

state actor knew any of this testimony to be false, her behavior is insufficient to constitute acting "under color of state law." The Sixth Circuit recently addressed this precise situation in *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) where the Court, in dismissing Section 1983 claims asserted against the complaining witness in a rape case, noted:

> [Plaintiff Moldowan] asserts claims under § 1983 against Fournier [the rape victim and complaining witness], a private citizen, alleging that she conspired to violate his Fourth, Fifth, Sixth, and Fourteenth Amendment rights by fabricating evidence or withholding exculpatory evidence. In addition to being inadequately pled, . . . we also hold that Moldowan cannot maintain an action under § 1983 against Fournier because she is not a "state actor" and did not act "under color of law." This circuit recognizes three tests for determining whether private conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test. . . . Moldowan offers no basis for concluding that any of these tests applies here. Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken "under color of law."

*Moldowan*, 578 F.3d at 399. Therefore, even if Plaintiff had shown a lack of probable cause and clearly identified the TMCC employee's problematic acts, as her only role in the harassment charge was providing information to the police and testifying on the stand, are insufficient to form the basis of a Section 1983 claim against her.

2.   *Dismissal Necessary Based on the Identity of the Defendants*

Finally, after the previous dismissals of claims and defendants outlined above, eight defendants remain: (1) Agents of the State of Tennessee; (4) Agents of the District Attorney's Office; (5) Agents of the District Public Defenders Office; (6) Agents of the General Sessions Court of Hamilton County Div. V; (7) Agents of the Criminal Court of Hamilton County Tn. Div. III; (11) Agents of the Tennessee Multicultural Chamber of

Commerce, Inc.; (12) Agents of the Chattanooga City Court; and (15) Agents of the Chattanooga City Police Department. Even if Plaintiff had pled his malicious prosecution claim sufficiently, most if not all[8] of the remaining defendants he sued would be absolutely immune from suit anyway.

First, Plaintiff sues "(1) Agents of the State of Tennessee," but does not specify which "agents" these are, how they differ from other defendants named more specifically elsewhere in the Complaint and Motion for Hearing, or in which capacity these "agents" harmed him. Further, and as Magistrate Judge Carter accurately noted, Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989). Accordingly, Plaintiff's suit against the defendant "(1) Agents of the State of Tennessee" would have to be dismissed even if the Court permitted him to amend his Complaint because it both fails to state a claim upon which relief can be granted and seeks monetary relief against a defendant immune from such relief.

Three additional defendants – (6) Agents of the General Sessions Court of Hamilton County Div. V; (7) Agents of the Criminal Court of Hamilton County Tn. Div. III; and (12)

---

[8]   The Court cannot analyze any potential immunity of "(15) Agents of the Chattanooga City Police Department" because Plaintiff's complaint and Motion for Hearing are so vague. The only times Plaintiff could be construed as even referring to the Chattanooga Police Department ("CPD") are his infrequent, conclusory mentions of Officer Roberts, especially since the Court already discussed and disposed of the conspiracy claims. Further, although he specifies in the caption of the Motion for Hearing that he is suing "Agents of" the CPD – which qualification would appear to limit his suit to one against the Chattanooga Police Department itself and the officers in their official capacity – he never makes any allegation that could even be remotely construed as alleging the existence and enforcement of a policy or custom of the CPD that resulted in his rights being violated, as required to find the CPD liable. *Hafer v. Melo*, 502 U.S. 21 (1991). Finally, even if this Court were to construe "(15) Agents of the Chattanooga City Police Department" generously as suing Officer Roberts in his personal capacity, as previously discussed, Plaintiff does not identify even generally which of Officer Roberts's acts (or failures to act) violated his civil rights, let alone that those rights were clearly established federal rights at the time Officer Roberts violated them.

-27-

Agents of the Chattanooga City Court (the "court defendants") – are protected by absolute judicial immunity. Despite Plaintiff's single-minded focus in his Complaint on the individual judges, by suing "agents of" the courts Plaintiff sues them only in their official capacities, and, as the Sixth Circuit reaffirmed recently in *Earl v. Ballew*, where "individual judges and clerks [are sued] in their official capacities for monetary relief, the complaint is barred by the Eleventh Amendment." *Earl v. Ballew*, No. 10-5052, at 4 (6th Cir. Feb. 22, 2011) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 & n.10 (1989)). Even if this Court construed his Complaint as one suing them in both their official and individual capacities, "[a] state judicial officer enjoys absolute judicial immunity from an award of money damages for past judicial acts on matters that are clearly within the court's jurisdiction." *See Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *Stump v. Sparkman*, 435 U.S. 349, 364 (1978); *Mann v. Conlin*, 22 F.3d 100, 103-104 (6th Cir. 1994). This is true even where the judge acts "erroneously, corruptly or in excess of jurisdiction." *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985). As all Defendant's charges against the judges and courts relate to a failure to provide him with rights related to a fair trial in their courtrooms – matters clearly within their subject-matter jurisdiction – all claims against the court defendants must fail. Therefore, even if the Court were to allow Plaintiff to amend his Complaint to sue "(6) Agents of the General Sessions Court of Hamilton County Div. V; (7) Agents of the Criminal Court of Hamilton County Tn. Div. III; and (12) Agents of the Chattanooga City Court," all such claims would have to be dismissed as seeking monetary relief against defendants immune from such relief.

Likewise, "prosecutors have absolute immunity from suits for malicious prosecution

and for defamation, and this immunity extends to the knowing use of false testimony before the grand jury and at trial," as well as "appearances at probable cause and grand jury hearings, evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings, and preparation of witnesses for trial." *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (internal quotation marks and citations omitted.) These particular forms of a prosecutor's absolute immunity are based in their absolute immunity for conduct was "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976), and even includes the prosecutor's decision on whether to prosecute the case at all. *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000); *Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997).

As to the prosecution of the harassment charge in the instant action, the "charges" against the prosecutors include: using Plaintiff's criminal history in continuing his detention; allowing the Complainant to offer "damaging hear-say 'SNITCH' and 'INFORMANT' type information against [Plaintiff]"; and introducing a "(trick-tactic)," the last of which is possibly a reference to the prosecution's allowing Complainant to testify in a manner inconsistent with earlier of her testimony, although the content of either of the two testimonies or the way in which they were inconsistent is not made clear. (Compl. 8, 24-25.) Aside from the fact that these allegations do not appear to allege actions that would necessarily be in violation of the law or Plaintiff's civil rights, even if Plaintiff had alleged that the prosecutor had knowingly allowed the introduction of false testimony in these instances, which he also did not, all of these allegations relate solely to the prosecutor's actions in court hearings and other circumstances "intimately associated with the judicial phase," and are thus claims from which the prosecutor will be absolutely immune from liability under Section

1983. Therefore, as with the claims against the court defendants, even if the Court allowed Plaintiff to amend his Complaint to sue "(4) Agents of the District Attorney's Office," all such claims would have to be dismissed as seeking monetary relief against a defendant who is immune from such relief.

The defendant "(5) Agents of the District Public Defenders Office" is similarly not subject to suit under Section 1983, although for slightly different reasons. Even though appointed counsel is paid by the state, he is acting on behalf of the defendant when acting in his traditional capacity as trial counsel and thus does not represent the state. Thus, the Supreme Court held that, with respect to Section 1983 claims, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding," and any complaints asserting claims pursuant to Section 1983 "based on such activities . . . must be dismissed." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). *See also*, *Vermont v. Brillon*, 129 S.Ct. 1283, 1291 (2009) (quoting *Polk County v. Dodson* in reaffirming its holding that "assigned counsel ordinarily is not considered a state actor" when acting as an advocate for a criminal defendant). Although there is some Sixth Circuit precedent significantly constraining the central holding of *Polk County* and defining its "administrative functions" expansively, *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 611-13 (6th Cir. 2007), none of Plaintiff's allegations here could even conceivably fall within that expanded definition; the only behavior of which Plaintiff complains in the harassment case – generic "ineffective assistance of counsel" and failing to object to the introduction of certain testimony (Compl. 19, 25; Mot. for Hr'g 6) – falls squarely within the public defender's role as counsel to defendant in a criminal proceeding. Therefore, even if the Court were to allow Plaintiff to

-30-

amend his Complaint, his allegations against the defendant "(5) Agents of the District Public Defenders Office" would still have to be dismissed as failing to allege claims against a defendant acting under color of state law, as required by Section 1983.

Finally, the remaining private defendant – (11) Agents of the Tennessee Multicultural Chamber of Commerce, Inc. – is absolutely immune from suit. First, there is no allegation that the TMCC is an agent of the state or acted under color of law, and there is no evidence of any state involvement. The only claim conceivably asserted against the organization itself is the "violation" of his First Amendment rights by failing to help publish his materials, but, as noted above, that is not a right, let alone one that can be vindicated through Section 1983. Although by suing "Agents of" the TMCC Plaintiff appears to be suing solely the organization, even if this Court were to construe his argument as one against the Complainant in the harassment case, as discussed above, she was not acting "under color of state law," and thus Plaintiff fails to state a claim against her.

In conclusion, as to the harassment charge, Plaintiff's pleadings are so vague and conclusory, and his attempt to amend so repetitive and devoid of any additional substance, that allowing amendment would be futile. Even where the Court attempted to discern whether Plaintiff had satisfactorily alleged the elements of a malicious prosecution claim, not only did he fail to allege properly a lack of probable cause, but the information he did submit demonstrated ample probable cause. Finally, such amendment would be futile as the majority of defendants remaining in the action either were not acting under color of state law or are entitled to absolute immunity. Therefore, as to the harassment charge, amendment would be futile as it would all claims relating to the harassment charge would have to be dismissed with prejudice.

-31-

**V.     CONCLUSION**

Accordingly, and for the reasons stated above, Plaintiff's "Motion for Hearing" (Doc. 4) is **CONSTRUED** as a motion to amend his complaint pursuant to Rule 15(a) and **DENIED**, as such amendment would be futile. Further, Plaintiff's Complaint (Doc. 2) is dismissed both for failing to state a claim upon which relief can be granted and pursuant to 28 U.S.C. § 1915(e)(2) as seeking monetary relief against defendants immune from such relief. Finally, Plaintiff's Motion to Request an Immediate Response to Complaint at Lawsuit" (Doc. 5) and a "Motion for Response in 15 Days" (Doc. 6) are hereby **DENIED AS MOOT**.

A separate judgment will enter. The Clerk is **DIRECTED** to close the file in this case.


**SO ORDERED** this 22nd day of March, 2012.


_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE